## YAZOO & M. V. R. Co. v. DUKE.

[74 South. 693, Division A.]

CARRIERS. *Carriage of passengers. Performance of contract of transportation. Liability of carrier. Damages. Excessive damages.*

Where plaintiff being a passenger on defendant's train was told by a train employee that she had reached her station and was assisted by him from the train at the wrong station and the train left before she could again board it, but the station agent took her to his home, where she spent the night and on the next morning she was carried to her destination by another train, in such case a verdict for five hundred dollars damages was excessive and will be reduced to two hundred dollars by requiring a remittitur or the case will be reversed.

APPEAL from the circuit court of Carrol county.

HON. H. H. ROGERS, Judge.

Suit by Evelyn Duke against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

113 Miss.—56

. Appellee, plaintiff in the court below, a minor sixteen years of age, purchased a ticket which entitled her to passage on appellant's train to Charleston, Miss. In her declaration she alleges that she was sitting in the passenger coach when the train came to a stop, and one of the employees of the company approached her seat, and, without announcing the name of her station, picked up her baggage and told her that this was the place for her to get off the train, and that, relying upon this statement, appellee disembarked, and found after the train had departed that she had been put off at the wrong station. The station agent sent her to the home of his brother, where she spent the night with the family, and next morning was accompanied to the station, boarded another train, and was carried to her destination. There was no proof of mistreatment or exposure or any hardship or lack of comfort suffered by the appellee. She recovered a verdict for five hundred dollars, and the railroad company appeals.

*Mayes, Wells, May & Sanders,* for appellant.

A brief allusion to some of the obligations of appellant as a carrier of passengers, may not be, at the outset, undesirable in the discussion of this case.

When the contract of carriage has been made by the sale and purchase of a ticket, or other contract for passage, the carrier assumes the contractual obligation toward the passenger to transport him to the place of destination named in the ticket or contract, and for failure to fulfill this obligation, the passenger may maintain an action for the resulting damages. This is a general statement of the rule, and it embraces many duties and obligations of a more specific character. The courts almost universally hold that it is no part of the undertaking of a railroad carrier, under ordinary circumstances, to do other than to safely transport the passenger, and to call out the names of the stations, and give the pas-

sengers a reasonable time to alight. They do not owe to each passenger the duty to warn him or her, concerning the arrival at their destination. The passenger is bound to the use of his senses, under ordinary conditions, and to take notice of the usual announcements of the station. *St. Louis, etc. R. Co.* v. *Ricketts,* 54 S. W. 1090; *Missouri, etc., R. Co.* v. *Miller,* 20 Tex. Civ. App. 570.

Ordinarily, a railway carrier of passengers is under no duty to assist passengers to get on and off its vehicles, or to find seats for them; nor are they bound to wake a sleeping passenger in time for him to leave the train at the place of his destination. *Sevier* v. *Vicksburg, etc., R. Co.,* 61 Miss. 8; *Texas, etc., R. Co.* v. *Alexander,* 30 S. W. 1113; *Nichols* v. *Chicago R. Co.,* 71 Ga. 710. The authorities are almost uniform that the railway carrier discharges its duty when it stops at a station long enough to afford all passengers intending to alight there, a reasonable time to disembark in safety and the conductor is not required to go through the train and ascertain that each passenger so intending, has, in fact, disembarked.

The consensus of judicial opinion is that, in the absence of special circumstance, requiring extra precautions after notice in favor of passengers, the railway carrier discharges its duty to them, when, having announced the station on approaching it, its train is stopped for a reasonable length of time to enable all passengers to alight in safety, and the train conductor is not required to go through the cars and make an inspection or personal inquiries of passengers, but is entitled to act upon the assumption that the passengers know their destination, and will alight there in the absence of knowledge to the contrary.

This is not a case which presents any exception to this general rule. The record shows that the appellee is a young lady of more than average intelligence and that she was not unaccustomed to travel on the trains.

The duty of the carrier in this regard is fully and ably discussed in the leading case of *Southern R. R. Co.* v. *Kendricks,* 40 Miss. 374, 90 Am. Dec. 332 and note, accompanying the last named report. *Pennsylvania R. R. Co.* v. *Kilgore,* 32 Pa. St. 294, 27 Am. Dec. 787, adopted by the supreme court at page 296; *Vicksburg and Jackson R. R.* v. *Patton,* 31 Miss. 192, 66 Am. Dec. 552; *St. John* v. *Van Sabtvoord,* 6 Hill, 157; *New Orleans, Jackson, & G. N. R. R.* v. *Hurst,* 36 Miss. 666, 74 Am. Dec. 785; *Norfleet* v. *Sigman,* 41 Miss. 630; *Malone* v. *Robinson,* 12 So. 709; *House* v. *Fultz,* 13 S. & M. 39; *So. R. P. Co.* v. *Kendricks,* 40 Miss. 374, cited *supra;* *Herndon* v. *Henderson,* 41 Miss. 584; *Miss. Cen. R. Co.* v. *Miller,* 40 Miss. 45; *I. C. R. R. Co.* v. *McGowan,* 92 Miss. 603; *Chapman* v. *Copeland,* 55 Miss. 476.

Thus it will be seen, that our own court has adjudged the giving of the instruction complained of in the case at bar was "fatally erroneous." We do not deem that further citation of authority on this assignment should be or is necessary.

The verdict of the jury was grossly excessive, and was manifestly the result of passion or prejudice. The lady suffered no injury. She was not exposed to any physical discomfort. She was cared for by kind and considerate friends, and after a comfortable night, she was carried to the train and proceeded upon her journey. She was not required to make any additional expenditure of money. She only suffered the annoyance of being a day late at her destination, for which the verdict was rendered for the sum of five hundred dollars. We submit that this rendition was so out of all proportion to any damages which were authorized by the evidence, that it conclusively shows that the jury "thought" in punitory figures, and acted in accordance with punitory thoughts.

*T. O. Fewell,* for appellee.

I submit that, taking all the instructions together both for appellee and appellant, the jury was properly instructed as to the law governing this case. Appellant

urges objection to the following instruction given appellee number 2: "The court instructs the jury that if they find for the plaintiff in this case, the measure of damages will be all such damage as the jury may think the plaintiff should be fairly entitled to from all the evidence in the case, not exceeding the amount sued for." I submit there can be no possible vice in the above instruction. Certainly there could be none when considered in connection with instruction number 2 given for appellant, as follows: "The court instructs the jury for the defendant that they cannot impose punitive damage against the defendant in this cause." 82 Miss. 653; 87 Miss. 344; 66 Miss. 318; 64 Miss. 645.

The main trouble with appellant seems to be that the jury believed the plaintiff's statement about the case rather than the statements of appellant's witnesses. This, as I understand the law, the jury had a perfect right to do. They are the judges of the credibility of the witnesses. Appellee is emphatic in her statement: "I bought my ticket at Glendora to Charleston and expected to change at Phillip and get on the Charleston train, and the conductor came through and clipped it and gave it back to me, and when I got on the Charleston train the conductor came through and took up my ticket, and as I handed it to him, I told him I wanted to go to Charleston, and we went on a piece and the conductor came to me and told me: 'Here is the place where you get off,' and I never had been along that road before and I didn't know anything about it and he took up my suit case and started out of the train and I followed him." I submit that if this statement is true appellee should recover. The jury evidently believed the statement to be true. See page 15 and 16 of the record. It is elementary law that, when there is a conflict in the evidence, it is the province of the jury to accept that which appeals to them as being the more reasonable. It is undisputed in the evidence that this young lady was never on that line of railroad before and that she had never been to Charles-

ton in her life; therefore it was perhaps inconceivable to the minds of the jury that she would deliberately make up her mind that Macel was Charleston and get off the train without being so directed by anyone.

I would call the court's attention to the discrepancies in the testimony for appellant.

Perhaps these discrepancies in the testimony of appellant's witnesses as to what was done and said at the time, coupled with the fact that appellee could have had no reason for wanting to get off at the wrong station, induced the jury to credit her testimony rather than theirs. 8 S. & M. 305; 13 S. & M. 656; Miss. Digest, Anno., page 146, No. 994; Same, page 147, No. 1001.

As to the amount of the verdict showing passion or prejudice upon the part of the jury, I submit that it does not. Here was a girl fifteen or sixteen years old, unused to travel, put off, the jury believed from the evidence, by the fault of the railroad company at a little way station in the Mississippi delta. She had there neither friend nor acquaintance.

I submit that this verdict ought to stand as a reasonable adjudication of the extent of the damage suffered by this girl as the result of the fault of appellant as found by the jury upon consideration and comparison of the evidence in the case.

SMITH, C. J., delivered the opinion of the court.

The amount of damages awarded is excessive within the rule requiring that the judgment of the court below be reversed unless a remittitur is entered. Consequently if a remittitur of three hundred dollars is entered the judgment will be affirmed; otherwise it will be reversed. and the cause remanded.

*Affirmed conditionally.*